241431 and 241512. Good morning, Your Honors, and may it please the Court. I'm Daniel Tryman of Freedman & Anspach, appearing on behalf of Appellant Defendant. There are three main points I want to make today. I will briefly preview each of them. First point, the term unfunded vested benefits has a plain, common-sense meaning. The District Court below's interpretation of 29 U.S.C. section 1415C is contrary to this plain meaning and renders the word unfunded meaningless. Second point, two very differently worded statutory subsections dictating two different mathematical formulas, 1415C and 1391E, cannot mean the exact same thing, but the District Court took as its starting point that 1415C must be forced to yield the exact same result as 1391E. By contrast, the Hofner Court in the Eastern District correctly took as its starting point that these two subsections cannot possibly yield identical results. Third point, the District Court failed to appreciate what is fundamentally unique about a section 1415 transfer, and hence why 1415C would yield a different result than 1391E. Specifically, one, a section 1415 transfer of liabilities and, importantly, assets, is mandatory as to the old plan. And two, the old plan is required to transfer some liabilities for the employer, but it is not allowed to transfer all liabilities for that employer. While it is required to transfer all of the employer's active employees, the old plan remains on the hook for paying benefits to all of that employer's retirees and other inactive vested employees. Zooming out to the bigger picture before returning to these points, absent absurd results, which are not present here... Why isn't it an absurd result to get a windfall? Well, I wouldn't agree that it's a windfall, and I think... It's an award of $1.8 million in withdrawal liability to cover unfunded liabilities that were transferred to the new plan. Why isn't that a windfall? The reason being that... Returning to the third point that I made... No, no, no. Just answer that question. I don't think it's a windfall or an absurd result. The... Because retirees and other inactive employees are left behind for that employer, the old fund remains obligated to provide benefits to those employees. Those employees have interests that need to be looked out for. And the old fund has been forced to make a mandatory transfer of assets. I think that that's something that the Hofner Court really focused upon. Like, this is mandatory as to the old fund, to make a transfer of assets in a specified amount by the statute. Assets have a certain value in that they're tangible. They are present at that moment. They're very real, and they can be invested to cover future liabilities. I'm not sure that you're clearly answering my question, because that still sounds like a windfall. I don't believe it's a... I mean, because you could make the argument that the windfall is appropriate for the other, so that the fund is in a decent place to take care of those that are left behind, but that still doesn't answer whether or not it is a windfall. I'm just trying to figure out what your position is. My position is that a 14-15 transfer imposes a unique set of circumstances on the old fund that is not present in other transfers in which the old fund would have some say in the matter, wouldn't be forced to transfer assets in an amount specified by a statutory formula, wouldn't be forced to retain an unknown but potentially very large number of vested retirees and other inactive participants. So given those unique circumstances that exist in specifically a 14-15 transfer, I don't believe that it's appropriate to call it a windfall or an absurd result. There is a reason for... There's an interest in protecting these individuals who are left behind with the fund. If I may return to the first point... Oh, I'm sorry. So absent absurd results which are not present here, the statute's plain meaning must control as the district court's alternative interpretation of the relevant statutory text is not a reasonable one. There is no ambiguity... Is it possible to read unfunded in 14-15C to refer to the fact that when the liabilities are transferred, they are unfunded with respect to the new plan, if not the old one? I mean, that still creates the problem of... Unfunded, I think, has to refer in some fashion to assets. Like the very term itself implies an interrelationship between assets and liabilities. If Congress had intended to simply mean all liabilities, they would have used the word liabilities, not this different term. In section 14-15, the term liabilities is the term that is used everywhere else. It's used nine times, I believe, in that subsection. I'm sorry, in that section, 14-15, whereas this is the only appearance of the term unfunded vested benefits. It has to mean something different than simply liabilities. So, returning to my first point again... So, an employer under this interpretation has every incentive to withdraw from new pension plans to escape unfunded liabilities? I'm sorry, from the new plan? Well, an employer's ability to withdraw may be limited insofar as when they've entered the new plan they are subject, presumably, to a collective bargaining agreement, which is the reason why they are contributing to the new plan. So, their ability to withdraw would be limited. Secondly, their ability, maybe, maybe not, but what you're suggesting is that they have, then, every incentive to withdraw from a new pension plan just to be able to escape, if you're right, these unfunded liabilities? Well, I mean, these particular unfunded liabilities wouldn't necessarily be unfunded liabilities for which they would be liable as, you know, it wouldn't be specific to them. It would be the new plan's liabilities as a whole. So, we'll hear from your friend on the other side and then you reserve some time for rebuttal. Thank you. May it please the Court. Jennifer Smith for Apolline Marcan. The question, as the Court correctly observed, that the fund has never managed to answer in all of the voluminous briefings submitted to the Court, is why should the old plan collect withdrawal liability that is assessed to protect a fund's ability to pay pension liabilities after it has transferred those liabilities to another plan and no longer has to pay them? The second issue that it's never managed to answer is even if it should be entitled or would benefit somehow from some portion of windfall, why in a statute that is so specific, so detailed, so thick, so highly reticulated, the amounts would be so random and so unpredictable? The result is absurd. The fund... But that's hard, too, because what we are having is a question of statutory construction, I think, where we are having to decide among competing canons the idea that terms need to be defined the same throughout versus the idea of avoiding absurd results. So if you could help me articulate, or if you could articulate to me why one is more compelling than the other or what about the statutory scheme points us in the direction of deciding with one canon versus another. I have a couple of responses to that. One is about the scheme, which you asked about, and the other is about the actual language. One issue that I think was raised by the fund and by appellant and is not discussed a lot in the paperwork, he said, well, the driving issue here is consent. The fund is forced. I would disagree. Judge Chen in the Huffner decision did focus on consent. I've actually been before Judge Chen in multiple cases over the last decade. I have tremendous respect for her. She's a wonderful judge. In this case, I think she got it wrong. She confused the result that the fund lost consent with the reason. If we look at the actual statute, what is the thing that makes this set of circumstances different from all other circumstances, voluntary, involuntary, go out of business, you can have a sale? It's in Section A. As a result of a certified change of collective bargaining representative. That's the difference here. When we talk about Congress protecting the new plan, when Time DC talks about making sure that both plans are fully funded, this is the issue here that made a difference. And the purpose of this is to ensure that the worker's free choice of union representative, of collective bargaining representative, is not chilled by the disadvantage that would occur by having them, by virtue of voting simply to change unions, which helps keep unions honest, that they have to be responsive to their workers, that they can leave, that that choice would not cause them to lose pension funding, to go from 100% funded pensions to, in this case, about two-thirds funded pensions. That their conditions are not burdened by withdrawal liability payments while they're also paying contributions. You can see this in the entire structure of the statute, of this section of the statute. The old fund is always protected, no matter what happens under the District Court's decision. The old fund is paid in full, and the fund never disputes the premise of pension funding, that if it is able to transfer $1.8 million in liabilities unaccompanied by assets, that that is a payment in full of the withdrawal liability assessment, just the same as the employer's payment. It never disputes that. That's a key premise of Judge Seibel's holding, that the fund is paid in full. So the fund is either going to get its withdrawal liability, it's going to be able to transfer liabilities unaccompanied by assets, or it will get some combination of the two. It will be protected. Everything in 1415, it's an entire section of ERISA dedicated to protecting the workers if they vote to change collective bargaining representatives. You can see in Section D, which the fund's interpretation of the language would have the court ignore wholesale. They simply say in their brief, oh, well, obviously just no one's going to follow that. So I find it interesting that they talk about the word unfunded in Section 1415C, but they ignore not only the rest of the sentence in 1415C, but they simply declare that no one will follow 1415D at all. So 1415D protects the employer by saying that the new plan, which is a proxy for protecting the participants, by saying that the new plan will only get liabilities unaccompanied by assets up to the amount of the withdrawal liability that it can charge back against the employer if it withdraws. The only entity in 1415 that has both the right and a specific path to block a 1415 transfer that is properly calculated and otherwise legitimate and with which there would be no problem in arbitration is the new plan. So I think the statutory scheme has to be interpreted in the realization that that is the purpose of 1415. So you think it was just an unfortunate drafting issue that they didn't redefine unfunded vested benefits when they used the phrase in Part 2? I think that if you look, it's actually interesting, if you look at 1391 against 1415 and in the Huffner decision on page 20 of that decision, they're actually provided side by side. They appear to have been drafted by different people who draft in different ways. So the fund says, oh, well, you can't have two different phrases in the statute mean the same thing. They have to mean different things. But if you look at the part we don't really talk about, the same words have to mean the same thing, not different things. Well, I think that's right. The different words must mean different things. Thank you. So if you look at the initial part, under 1319E, the drafter said, withdraw an employer's liability under this part. In 1415C, the drafter just went through the steps more, as determined under Section 1381B of this title, without regard to such transfer. There are a lot more words there, and it's a multi-step that's included in the initial part of 1391. That is then copied in the next section, where 1391E simply says, transferred unfunded vested benefits. Again, whoever drafted 1415 had this more multi-step thing. Well, you take the value of the unfunded vested benefits allocable to the employer exceeds that there are unfunded liabilities in excess of the assets transferred. So no one is arguing, and in fact all courts who've looked at this agree, that under this part means exactly the same thing as withdraw liability as determined under and so forth and so on. So different words in those two sections, everybody agrees mean the same thing. And so to say that the different words in the next section can't mean the same thing, I think is incorrect. They appear to have been drafted by different people who drafted in different ways. Also, you have to remember it's a fund itself, which took the trouble to say, oh, well, unfunded vested benefits is used all the time in Part 1. Look at all the times it's stated. It's a well-defined phrase. They're using it. And yet it's only used once in Part 2. It's a completely different drafting style. I was not as familiar with that phrase. I would also say to answer why do we say that this is better linguistically. What you're urging is a interpretation that's contrary to a canon of statutory interpretation, I think. I don't think so, Your Honor, because for one thing, the canon of, if you're talking about the canon against surplusage. I think using within one statute, use a phrase with a consistent meaning, the whole act. Yes, Your Honor. But in this case, that canon is contradicted by the direct language of the statute, because the definition that is given to unfunded vested benefits in 1393 specifically says that it is limited to that part. So the cases that the Fund cites to say that it must mean the same thing in Part 2, none of them involve a situation where the Congress itself said this definition is only in one place. But I think it's important to say that... For the purposes of Part 1 only. And as to a plan, it says over and over again, it says the language when you're considering the assets of the plan, as to a plan, it limits it to the plan. But I think it's important to note that the actual phrase in 1415C is not unfunded vested benefits. It's means withdrawal liability. The Huffner Court held it means withdrawal liability. The Fund's own actuary in her May 17, 2021 memo held that that phrase means withdrawal liability. The employer's actuary disagreed with it, but said yes, that phrase means withdrawal liability. But it cannot possibly mean that because there's an internal contradiction. The BAT language in 1415C says value of unfunded vested benefits allocable to the employer, withdrawal liability, which were transferred by the plan sponsor. Everybody also agrees withdrawal liability is not transferred. The Fund is trying to ignore the fact that the actual phrase and the actual definition of that phrase is withdrawal liability, but it can't mean that because withdrawal liability is not transferred. So given that we do not have a set of language in 1415C1 that can track the literal language, we then must look at what is the interpretation which best accounts for all of the words and also serves the purpose of the statute and works with all of the other subsections. The Fund's interpretation requires you to ignore the language allocable to the employer transferred to the new plan, requires you to completely ignore section 1415D, requires you to ignore the fact that 1415F would be completely gutted by this interpretation. I think that the district court, the employer's formulation, and on page 37 of our principal brief, we actually go through the various words that different commentators in courts have used to explain or to describe the meaning of that section, and there are a lot of them. We have advocated unfunded vested benefits in excess of assets. I think perhaps the district court, Judge Seibel in her wisdom, did it best actually, because she did accurately... So on that note, thank you very much. Thank you very much. I would simply note that the statutory definition from 1393C also simply accords with the common sense meaning of the phrase unfunded vested benefits, which implies a relationship between assets and liabilities. Can you speak up a little bit? Oh, I'm sorry. I would simply note that the statutory definition, 1393C, even if limited by its terms to part one, accords with the common sense meaning of the phrase unfunded vested benefits insofar as that necessarily incorporates both assets and liabilities, both of which are transferred in the section 1415 transfer. That's the core of the argument, yes. And therefore the definition imposed on this term by the district court is simply not susceptible... The words are simply not susceptible to that meaning that was imposed by the district court, which brings us to the land of having to declare that the outcomes are absurd or that it's a Scrivener's error. And I think the court should be very hesitant, as I'm sure it would be, to reach such conclusions. And I do think that it's worth... Important to credit... I don't know that we've got to say absurd or a Scrivener's error. At that point, maybe what we do is assess or determine that it's ambiguous in terms of the text and we look at other factors, other indicia of what Congress intended. I understand. Words matter. I would also note that if 1415C was intended to mean the exact same thing as 1391E, the general default, there would be no need for a section 1415C. You could simply use section 1391E for section 1415 transfers as well. Thank you very much. Thank you.